STATE EX REL. GEIPEL and wife, Appellants, v. CITY OF MILWAUKEE and others, Respondents.

*No. 333. Submitted under sec. (Rule) 251.54 May 8, 1975.—Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 585.)

---

[4] *Garriguenc v. Love* (1975), 67 Wis. 2d 130, 226 N. W. 2d 414.

728

730

For the appellants the cause was submitted on the brief of *John H. Niebler* and *Niebler & Niebler,* all of Menomonee Falls.

For the respondents the cause was submitted on the brief of *James B. Brennan,* city attorney, and *William J. Lukacevich,* assistant city attorney.

BEILFUSS, J. The basic issue is whether the assessor's method of valuation was proper under the facts of this case.

The scope of review by certiorari is strictly limited in Wisconsin. As stated in *State v. Goulette* (1974), 65 Wis. 2d 207, 215, 222 N. W. 2d 622, the reviewing court may consider only:

". . . (1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *State ex rel. Ball v. McPhee* (1959), 6 Wis. 2d 190, 94 N. W. 2d 711; *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. 2d 243, 111 N. W. 2d 198; *State*

*ex rel. Kaczkowski v. Fire & Police Comm.* (1967), 33 Wis. 2d 488, 148 N. W. 2d 44, 149 N. W. 2d 547; *State ex rel. Hippler v. Baraboo* (1970), 47 Wis. 2d 603, 178 N. W. 2d 1. . . ."

In the context of property assessment for purposes of taxation the court may determine whether the assessment was made on the statutory basis, for such inquiry involves a question of law. *State ex rel. Garton Toy Co. v. Mosel* (1966), 32 Wis. 2d 253, 257, 145 N. W. 2d 129; *State ex rel. Boostrom v. Board of Review* (1969), 42 Wis. 2d 149, 156, 166 N. W. 2d 184; *State ex rel. Markarian v. Cudahy* (1970), 45 Wis. 2d 683, 686, 173 N. W. 2d 627. If the proper basis was used, however, and the valuation was not made arbitrarily or in bad faith, the reviewing court must sustain the valuation if there is any evidence to support it. *State ex rel. Pierce v. Jodon* (1924), 182 Wis. 645, 648, 197 N. W. 189; *State ex rel. Dane County Title Co. v. Board* (1957), 2 Wis. 2d 51, 63, 85 N. W. 2d 864; *State ex rel. Garton Toy Co., supra.*

The pertinent statute, sec. 70.32 (1), Stats., provides in part:

"**Real estate, how valued.** (1) Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03 (2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value the assessor shall consider, as to each piece, its advantage or disadvantage of location, quality of soil, quantity of standing timber, water privileges, mines, minerals, quarries, or other valuable deposits known to be available therein, and their value; but the fact that the extent and value of minerals or other valuable deposits in any parcel of land are unascertained shall not preclude the assessor from affixing to such parcel the value which could ordinarily be obtained therefor at private sale. . . ."

The proper statutory basis for assessment has been set forth repeatedly by this court:

"The valuation of real estate for tax purposes is governed by sec. 70.32 (1), Stats., which requires it to be valued from the best information at 'the full value which could ordinarily be obtained therefor at a private sale.' Commonly stated, sec. 70.32 (1) requires real estate to be assessed at its fair market value which has often been defined as the amount the property could be sold for in the open market by an owner willing and able but not compelled to sell to a purchaser willing and able but not obliged to buy. [Cases omitted.]

"The 'best information' of such value is a sale of the property or if there has been no such sale then sales of reasonably comparable property. In the absence of such sales, the assessor may consider all the factors collectively which have a bearing on value of the property in order to determine its fair market value. However, it is error to use this method 'when the market value is established by a fair sale of the property in question or like property.' *State ex rel. Enterprise Realty Co. v. Swiderski* (1955), 269 Wis. 642, 645, 70 N. W. 2d 34. The statutory rule of assessment of real estate is restricted to its sale value in the open market and is not concerned with its intrinsic value if the intrinsic value differs either more or less from the sale value. *State ex rel. Northwestern Mut. Life Ins. Co. v. Weiher* (1922), 177 Wis. 445, 448, 188 N. W. 598." *State ex rel. Markarian, supra,* pp. 685, 686.

". . . sec. 70.32 (1), Stats., requires tax assessments of property utilizing the 'best information' of the fair market value. Where a 'fair sale' of the property has occurred, it is error to utilize other evidence of intrinsic value in the assessment. . . ." *State ex rel. Lincoln Fireproof Warehouse v. Board of Review* (1973), 60 Wis. 2d 84, 98, 208 N. W. 2d 380.

"Where the clear market value is *not* established by a sale or sales the assessor or the board of review should consider all the facts collectively which have a bearing upon such market value, in order to determine it. But such facts only indicate what the fair market value is

and there is no occasion to resort to them, and it is wrong to do so, when the market value is established by a fair sale of the property in question or like property. . . ." *State ex rel. Enterprise Realty Co. v. Swiderski* (1955), 269 Wis. 642, 645, 70 N. W. 2d 34.

These excerpts clearly demonstrate that when an actual sale of the property under consideration has occurred, resort should not be made to extrinsic factors in determining the fair market value of the property. There may, of course, be situations in which actual sale price is not a valid indicator of fair market value. *State ex rel. Flambeau Paper Co. v. Windus* (1932), 208 Wis. 583, 587, 243 N. W. 216. The sale must be a fair, arm's-length transaction without compulsion or pressure on either party, and the taxpayer has the burden of showing that the sale was made under normal conditions. *State ex rel. Evansville Mercantile Asso. v. Evansville* (1957), 1 Wis. 2d 40, 43, 44, 82 N. W. 2d 899; *State ex rel. Lincoln Fireproof Warehouse, supra,* page 90.

A threshold question in the instant case is whether the contract between the appellants and Skyline Realty, Inc., should be treated differently from other sales merely because it is an option to purchase rather than an outright sale. We hold that such fact alone should not be determinative. If the agreement was the result of arm's-length negotiations and is reasonably contemporaneous with the assessment, the agreed price, like a sale price, is the best indicator of market value. That is especially true in the instant case, where sales of land under the terms of the agreement were consummated both before and after the assessment date, and where the agreed price is designed to vary to reflect economic fluctuations. Therefore, we consider the agreement to be in the nature of a sale for purposes of valuation.

In regard to whether the transaction was a fair, arm's-length agreement, appellant Harvey Geipel testified that he had tried to sell the property for several years through several realtors but had never received an offer higher than that embodied in the agreement. That testimony, in conjunction with the fact that sales were consummated under the agreement, and in the absence of any evidence to the contrary, is sufficient to establish the bona fide nature of the transaction.

*State ex rel. Lincoln Fireproof Warehouse, supra,* pages 97–99, offers guidance on this point:

"Respondents further contend the evidence establishes, as a matter of law, that circumstances surrounding the sale establish the sale was not at arm's length and, therefore, could not be utilized as an indicator of fair market value. These circumstances include the railroad's interest in selling the building to a customer who would be interested in continuing the rail shipping business and the fact that no six percent real estate commission had to be paid if the property were sold to Lincoln. It must be observed, however, that these factors go only to the 'willingness' of the parties to deal and not to their 'compulsion' to do so. The definition of clear market value consistently adhered to by the court is 'the amount the property could be sold for in the open market by an owner willing and able but not compelled to sell to a purchaser willing and able but not obliged to buy.'

"It cannot be denied that the parties to the 1969 real estate transaction were desirous of doing business with each other for all of the reasons outlined by respondents. Yet nothing in the undisputed evidence before the board indicates any compulsion to buy or sell the property. Neither of the two corporate entities was in 'necessitous circumstances' which would cause the sale to be at a depressed price and, while it might be argued that the railroad company made less than vigorous attempts to find other buyers, it is also true such was the railroad's corporate policy. That word of the railroad's desire to sell the property was received in the real estate com-

munity is evidenced by the number of low offers received by the railroad company.

". . . Since it is clear from the undisputed evidence in the instant case that the parties were willing but not compelled to transact, it follows that the sale was fair and the sale price did adequately reflect the fair market value. The assessor, the board of review, and the circuit court on certiorari erred in rejecting the sale price of the subject property as evidence of its fair market value. There is nothing in the record to support the conclusion that the sale was not an arm's-length transaction conducted by parties willing but not compelled to transact." *See also: State ex rel. Evansville Mercantile Asso., supra,* pages 44, 45.

Both the assessor and the circuit court espoused two primary reasons for their conclusion that the agreement was not an arm's-length transaction: (1) The appellants' right to repurchase their homestead, and (2) their right of first refusal for the purchase of industrial buildings. However, as stated in *State ex rel. Lincoln Fireproof Warehouse, supra,* page 98, "these factors go only to the 'willingness' of the parties to deal and not to their 'compulsion' to do so."

As we view it, the option to repurchase and the right of first refusal are merely elements of consideration which, together with the monetary amount per acre, comprise the total sale price of the land.

At the hearing, Ternes alleged that the amount agreed upon per acre was unrealistic because, while the agreement provided the same price per acre for all the land, some of it was flood plain and hence worth less than the contested 60 acres which were on higher ground. This theory is refuted by the record, however, which reveals that the bulk of the flood plain land was sold by Skyline Construction, Inc., another corporation of which Retzlaff was president and sole stockholder, to the Milwaukee County Park Commission on June 20, 1969, for $3,800 per acre.

■

We hold that because a "sale" of the property had occurred, the assessor erred in relying on "comparable sales" to establish the market price of the property in question and the assessment must be set aside. The evidence clearly reveals that the agreement price was the highest the appellants could get for the property from a willing buyer. With regard to the right of repurchase and the right of first refusal, the proper method of valuing the property is to determine the value as of May 1, 1970, and prorate it over the entire 304 acres, ascribing to each acre its proportionate share of the extra consideration. The resulting amount, when added to $3,837 (the monetary contract price as of May 1, 1970), will yield the total consideration and hence the market price per acre as of May 1, 1970.

We add, however, that our holding here should not be construed to mean that in every case where an option price is established by the parties such price will ipso facto be deemed fair market value. There may well be situations where such price, especially if agreed upon well in advance of the assessment date, may not adequately reflect changing conditions such as development of adjacent land, which increase the market value of the property to an extent not contemplated when the option price was agreed upon. The record fails to reveal any such situation in the instant case.

Furthermore, we recognize that our holding has a potential for abuse by unscrupulous individuals seeking to establish a low basis for taxation. However, the burden is always on the taxpayer to demonstrate the bona fide nature of the transaction.

*By the Court.*—Judgment reversed and remanded for further proceedings.