Marina FONTANA, a limited partnership, Marina Fontana, Inc., a corporation and ABKA, an Illinois general partnership, Plaintiffs-Respondents,

v.

VILLAGE OF FONTANA-ON-GENEVA LAKE, a municipal corporation, Defendant-Appellant.†

Court of Appeals

*No. 81–654. Submitted on briefs December 31, 1981.—*
*Decided March 25, 1982.*
(Also reported in 319 N.W.2d 900.)

† Petition to review granted.

For the defendant-appellant the cause was submitted on the brief of *Robert D. Sundby* of *DeWitt, Sundby, Huggett & Schumacher, S.C.* of Madison.

For the plaintiffs-respondents the cause was submitted on the brief of *John L. Maier, Jr.* of *Greenwald, Maier & Newton, P.C.* of Rockford, Illinois.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J. This is an appeal from a judgment granting a refund for property taxes levied in 1972. The trial court held that the assessment was void because the assessor failed to consider the best information he could practicably obtain; specifically, the actual costs of construction of a new addition. The court then determined the proper amount of reassessment based on a subsequent sale of the property. We conclude that the trial court properly decided the original assessment was void. We also hold that the court acted within its statutory authority when it established a value based upon a recent sale price. Accordingly, we affirm.

The property at issue is a resort-hotel complex called the "Abbey" located in the village of Fontana-on-Geneva Lake. It includes eighty-eight acres of land with building improvements. The Abbey was originally owned by a limited partnership, Marina Fontana. The partnership was incorporated in 1969 as Marina Fontana, Inc. At the time of the 1970 assessment, a major addition was under construction. The village assessor determined that the addition was fifteen percent completed in 1970 and made a partial assessment that year based on fifteen percent of the estimated replacement costs less depreciation. The cost estimation was based upon the Wisconsin Property Assessment Manual.

The addition was completed prior to the 1972 assessment. The assessor made the new property valuation without using actual construction cost figures. Instead, he used the fifteen percent figure for the 1970 assess-

ment and increased it to 100 percent. At that time, however, the village was assessing at eighty percent of full value. The assessor's method resulted in an increase in valuation of the property in the amount of $2,268,800.00.[1] However, no notice of the increase in assessment was sent, so that the owners did not learn of the increase until the board of tax review had adjourned. The owners paid the assessed tax of $187,459.26 under protest and filed a claim with the village for a refund on January 15, 1973.

On March 1, 1973, the Abbey was sold by Marina Fontana, Inc. to ABKA, an Illinois general partnership, for $6,613,000.00. The sale price included both the real estate and personal property.

This action was commenced on April 12, 1973 by the former and present owners of the Abbey. The Village demurred to the complaint on grounds that the owners failed to protest the assessment through the board of tax review. The trial court overruled the demurrer, and, on appeal, the Wisconsin Supreme Court affirmed. *Marina Fontana v. Village of Fontana-on-Geneva Lake*, 69 Wis. 2d 736, 233 N.W.2d 349 (1975). The supreme court held that the Village's failure to give the requisite notice resulted in a waiver of the owners' obligation to proceed via the board of tax review. *Id.* at 743, 233 N.W.2d at 352.

After trial on remand, the circuit court issued a memorandum decision. The court found that the assessor failed to evaluate the property in accordance with sec. 70.32(1), Stats., and declared the 1972 assessment void.

---

[1] The pleadings in this case originally set forth the change in valuation as an increase of $2,198,480.00. That figure represented the difference between the original 1972 assessment of $6,572,-300.00 and the owners' claim of equalized market value worth $4,373,820.00. The Wisconsin Supreme Court in its opinion on the original appeal used these figures from the complaint because its review was limited to the pleadings. On this appeal, we have adopted the figures set forth in the trial court's findings.

The court then decided, in accordance with sec. 74.74 (1), Stats., to continue the action pending reassessment. The court stated that the 1973 sale was to be considered by the assessor in arriving at the new assessed value.

The village's reassessment set the combined value of the real and personal property at $7,039,858.00 but did not consider the sale of March 1973. The court reviewed the reassessment and issued a memorandum decision holding that, because the Village failed to consider the March 1973 sale, the reassessment was void. The court, *sua sponte,* proceeded to determine the amount of "taxes which were justly chargeable against the lands." Sec. 74.74 (2), Stats. The court concluded that the March 1973 sale price of $6,613,000.00 was the correct value for the combined realty and personalty. The court accepted the village assessor's original valuation of the personalty at $1,215,000.00 and subtracted that amount from the sale price to reach a total real estate value of $5,398,000.00. The court then applied the Village rate of eighty percent of market value in 1972 and determined the amount of taxes accordingly.

The Village next moved the court to consider the constitutionality of secs. 74.74 (1) and 75.54 (3), Stats., as applied by the trial court. After a hearing, the court denied the Village's motions and issued further findings and conclusions. The court determined that the proper value was $4,318,400.00 and concluded that the proper tax amount for 1972 was $122,081.17. The court then awarded the taxpayers a judgment in the amount of $65,-378.09, plus costs and interest dating from January 15, 1973.

## I.   1972 ASSESSMENT

### A.   *Failure to Consider Actual Construction Costs*

The Village contends that the trial court committed error in declaring the 1972 assessment void. The Village

argues that the taxpayer has the obligation to present the assessor with evidence and that the assessor was not required to seek out evidence of actual construction costs. According to the Village, the Wisconsin Property Assessment Manual, as supplemented, was the best information the assessor could practicably obtain, and, thus, it was sufficient under the law.

The standard for assessments is set forth in sec. 70.32 (1), Stats., which provides, in relevant part, as follows: "Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03 (2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at a private sale."

Failure to consider evidence of actual costs may constitute grounds for invalidating an assessment based on estimated costs. *Rosen v. City of Milwaukee*, 72 Wis. 2d 653, 663–64, 242 N.W.2d 681, 685 (1976). In *Rosen*, taxpayers contested an assessment based upon estimations of market value where there was uncontroverted evidence showing the actual costs of construction and costs of the land. The *Rosen* valuation had been arrived at by adding the estimated replacement costs of each building, less estimated depreciation, to the estimated market value of the land.

The supreme court in *Rosen* held that the board of tax review erred in making its valuation of the real estate improvements because it relied on estimated replacement costs instead of actual construction costs. The court stated:

Because there was no evidence of sale of this property nor of any reasonably comparable sales of like property, the board was required to consider the evidence of actual costs. In *State ex rel. Garton Toy Co. v. Mosel*, [32 Wis. 2d 253, 145 N.W.2d 129 (1966)] this court, quoting with

approval from the circuit court's opinion, stated at page 261:

"... 'There is nothing in the record to cast doubt concerning the veracity of these actual costs nor is there anything in the record even tending to indicate that such construction costs were anything other than bona fide costs, existing in the area at the time, and arrived at through arm's length negotiating .... No factor, theory or rule of thumb can substitute for very recent undisputed, actual market cost figures. In any event such actual construction costs cannot be wholly ignored when applying a factor or theory, as was done here. ...'" [Citation added.]

*Rosen*, 72 Wis. 2d at 669, 242 N.W.2d at 688.

We hold that the authority of *Rosen* is controlling in the present case. The assessor has an obligation to use the "best information" available. The fact that the taxpayer has the right to challenge the assessment does not relieve the assessor of this duty in the first instance. Here the actual construction cost figures were recent and substantiated. The trial court found that the accuracy of those costs was undisputed. Accurate figures showing actual costs is better information on which to form the basis of an assessment than is a mere estimate. We conclude that the trial court did not commit error in holding the 1972 assessment void for the assessor's failure to consider actual costs of construction.

### B. *1973 Sale Price as Basis For Declaring Assessment Void*

The Village next contends that because the March 1, 1973 sale figures were not available to the assessor at the time of the 1972 assessment, the trial court could not use the sale price as a basis for finding the assessment void. However, the record reflects that the trial court's

reason for holding the original assessment void was not the failure of the assessor to use the 1973 sale price but rather the assessor's failure to take into account the actual costs of construction. The court acknowledged that in 1972, the assessor could not have considered the subsequent 1973 sale, but the court ruled that "we now have to take into consideration the sale . . . and the court is saying that on the reassessment that the sale has to be taken into consideration, and I would like to see that in the order."

Sale price may be used to determine market value even where the sale is subsequent to the assessment. *State ex rel. Geipel v. City of Milwaukee,* 68 Wis. 2d 726, 229 N.W.2d 585 (1975) ; *State ex rel. Evansville Mercantile Association v. City of Evansville,* 1 Wis. 2d 40, 82 NW2d 899 (1957).[2]

Indeed, the best information for real property valuation is a recent, arm's length sale of the property. *State ex rel. Wisconsin Edison Corp. v. Robertson,* 99 Wis. 2d 561, 567, 299 N.W.2d 626, 629 (Ct App 1980). It is error to use other factors "when the market value is established by a fair sale of the property in question or like property." *Id.*

---

[2] The trial court relied upon *State ex rel. Geipel v. City of Milwaukee,* 68 Wis. 2d 726, 229 N.W.2d 585 (1975), and *State ex rel. Evansville Mercantile Ass'n v. City of Evansville,* 1 Wis. 2d 40, 82 N.W.2d 899 (1957), in stating that the subsequent sale was a proper basis for the assessment. In *Geipel,* the actual sale was subsequent to the assessment although the property was subject to an option with an agreed price at the time of the assessment. In *Evansville,* the sale was contemporaneous with the assessment.

The trial court conceded that an assessment is not rendered void because the assessor failed to consider the value determined at a later sale. However, the proper market value may be established by reference to a subsequent sale, provided that the sale meets other necessary criteria.

We accept the trial court's finding that the assessor failed to consider the "best information," to wit, the actual construction costs. The court noted that there was "a very great disparity" between the 1972 assessment and the actual construction costs and that the inaccuracy of the 1972 assessment was corroborated by the 1973 sale price.

We conclude that the trial court did not commit error when it declared the original 1972 assessment void and directed the assessor to consider the 1973 sale price in arriving at the new assessment.

## II. REASSESSMENT

The Wisconsin Supreme Court held in the original appeal of this action:

[I]n the event the trial court finds the assessment void, the responsibility of determining whether to proceed with reassessment under sec. 74.74(1) or (2), Stats., lies with the trial court . . . .

*Marina Fontana,* 69 Wis. 2d at 745, 233 N.W.2d at 353.[3]

Section 74.74, Stats., sets forth the trial court's options as follows:

REASSESSMENT OF PLAINTIFF'S TAXES. (1) In any action for the recovery of any money paid as and for taxes levied either upon real or personal property, or both, if upon the trial it shall appear that the assess-

---

[3] Although the supreme court in the original appeal used the word "reassessment" in reference to both alternatives presented in sec. 74.74(1) and (2), Stats., we note that subsection (2) of sec. 74.74, Stats., involves a determination of "taxes" and does not refer to "assessments." Although the trial court on remand at first used the word "assessment" in reference to subsection (2), the court later clarified that it was making a determination as to the amount of *taxes* justly chargeable, in accordance with sec. 74.74(2), Stats.

ment upon which the taxes were so paid is void, the court, before entering judgment, shall continue the action for a sufficient time to permit a reassessment of the property affected by such void assessment, and such reassessment shall thereupon be made in accordance with the provisions of law. If from such reassessment when so made it shall appear that the sum or sums paid for taxes by the plaintiff are no greater than his equitable and just share of the taxes as so reassessed, judgment shall be entered for the defendant; and if from such reassessment it shall appear that the plaintiff has paid more than his equal and just share of the taxes judgment shall be entered in his favor for the excess only over such share. The validity of the reassessment herein provided for may be attacked and determined, and subsequent reassessments may be had as provided by s. 75.54; provided, that such reassessment shall in all cases be made by the assessor of the assessment district wherein the property to be reassessed is situated.

(2) If however, in any such action now pending or which may be begun hereafter the evidence enables the court to determine, with reasonable certainty, the amount of taxes which were justly chargeable against the lands involved in the action, the court, in its discretion, may proceed to judgment without staying proceedings or ordering a reassessment, if it finds that it is for the best interests of all parties to the action that it should do so.

The trial judge in the instant case initially continued the action in accordance with sec. 74.74(1), Stats., and ordered a reassessment. When the reassessment was completed, however, the court determined that it, too, was invalid, not only because the assessor failed to follow the directions of the court and consider the 1973 sale, but also because the assessor included the personal property in the reassessment. The court then decided to exercise its authority under subsection (2) of sec. 74.74, Stats., to determine itself the amount of taxes justly chargeable against the property.

The Village argues that because the trial court first ordered a reassessment under sec. 74.74(1), Stats., the

court did not have jurisdiction to proceed under sec. 74.74(2), Stats., and determine the amount of taxes. The Village relies on the following language from sec. 74.74(1), Stats.: "The validity of the reassessment herein provided for may be attacked and determined, and subsequent reassessments may be had as provided by s. 75.54 . . . ." According to the Village, the statute requires that the validity of the reassessment is to be determined according to the provisions of sec. 75.54, Stats. Specifically, the Village cites subsection (3) of that statute, which provides that after a party files objection to a reassessment made under that statute, "the court may direct an issue to be made up involving the objections aforesaid, which shall be tried summarily by the court, which shall make an order sustaining or overruling such objections." Thus, the Village argues that the trial court here was required to conduct a trial on the owners' objections to the reassessment.

Contrary to the Village's position, a trial court retains the authority to determine the amount of taxes under subsection (2) of sec. 74.74, Stats., even if it first proceeds by ordering a reassessment under subsection (1). The language of subsection (1) provides that "[t]he validity of the reassessment herein provided for may be attacked and determined, . . . ." The second clause of that sentence continues, "and subsequent reassessments may be had as provided by s. 75.54 . . . ." The Village incorrectly interprets this last sentence to require that sec. 75.54, Stats., would govern not only a subsequent reassessment but also a determination as to the validity of the original reassessment.

We hold that the trial court has the authority to determine the amount of taxes, regardless of whether the court proceeds under sec. 74.74 or sec. 75.54, Stats. Both statutes provide, in identical terms, as follows:

If however, in any such action now pending or which may be begun hereafter the evidence enables the court to determine, with reasonable certainty, the amount of taxes which were justly chargeable against the lands involved in the action, the court, in its discretion, may proceed to judgment without staying proceedings or ordering a reassessment, if it finds that it is for the best interests of all parties to the action that it should do so.

Secs. 74.74 (2) and 75.54 (6), Stats. Even if the Village's interpretation were correct and the validity of the original reassessment were to be determined as provided in sec. 75.54, Stats., the court had the same discretion to proceed *sua sponte* and determine the amount of tax if the court found it was in the best interests of the parties and the court was able to do so with reasonable certainty.

In construing a statute, this court will first consider the language of the statute itself. *Berns v. Wisconsin Employment Relations Commission,* 94 Wis. 2d 214, 220, 287 N.W.2d 829, 831 (Ct. App. 1979). The entire section and related sections are to be considered in its construction or interpretation. *Id.*

We do not accept the Village's reading of the last sentence of sec. 74.74 (1), Stats. Under the terms of the statute, "[t]he validity of the reassessment herein provided for may be attacked and determined, . . . ." We interpret this to mean that the court may determine the validity of the reassessment without reference to sec. 75.54, Stats. Once the court declares the reassessment invalid, it may proceed to order a subsequent reassessment under sec. 75.54, Stats., or, in the alternative, the court may determine the amount of taxes under the criteria of sec. 74.74 (2), Stats.

The trial court's decision to determine the amount of tax was appropriate in this case. The judge concluded

that such action was in the best interests of the parties. In the words of the judge: "It seems clear to the Court that the Village refuses to apply the proper criteria to the assessment and that if I were to order another reassessment we would be back here again with the same situation." We hold that the court did not abuse its discretion in proceeding, *sua sponte,* to determine the amount of tax under sec. 74.74(2), Stats.

### III. FAIR MARKET VALUE BASED ON THE 1973 SALE

The Village contends that the 1973 sale was not conclusive as to fair market value because the relationship between the parties to the transaction and the circumstances of the sale establish that this was not an "arm's length" sale.

A taxpayer has the burden of showing that the sale was made under normal conditions so as to lead to the conclusion that the price paid was that which could ordinarily be obtained for the property. *State ex rel. Evansville Mercantile Association v. City of Evansville,* 1 Wis. 2d 40, 43–44, 82 N.W.2d 899, 901 (1957). The transaction must be made between an owner willing but not obligated to sell and a purchaser willing but not obligated to buy. *State ex rel. Keane v. Board of Review,* 99 Wis. 2d 584, 593–94, 299 N.W.2d 638, 643 (Ct. App. 1980).

The trial court in this case found that the March 1, 1973 sale was an arm's length transaction. The court referred to the extensive trial testimony and stated that it was satisfied that the sale was by a seller willing but not required to sell and a buyer willing and able to purchase, as required by law. The court noted that the sale was not made of necessity. Instead, it found that the

seller's controlling shareholder wanted to dispose of this property because it was located in an area where the shareholder did not desire to operate.

The findings of the trial court will not be disturbed on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107, 293 N.W.2d 155, 159 (1980). We conclude that the trial court's finding that the 1973 sale was an arm's length transaction is supported by the evidence. Therefore, the sale could be used as a basis for establishing the value.

## IV. CONSTITUTIONALITY

The Village next challenges the constitutionality of secs. 74.74(2) and 75.54(3), Stats., as applied by the trial court in this case. The Village argues that the statutory authority of the trial court to determine reassessment violates the principle that only the legislature, not the judiciary, may levy taxes.

Under the Wisconsin Constitution, "[t]he rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property . . . as the legislature shall prescribe." WIS. CONST. art. VIII, § 1.

Statutes are presumed to be constitutional, and one who challenges the constitutionality has the burden of demonstrating its unconstitutionality beyond a reasonable doubt. *Kollasch v. Adamany*, 99 Wis. 2d 533, 557, 299 N.W.2d 891, 902 (Ct. App. 1980).

Contrary to the Village's assertion, a judicial determination of the amount of taxes justly chargeable is not

a "levy" of taxes. A court, in determining the proper amount of taxes justly chargeable, is not making a determination as to the amount of assessment or the percentage of assessed value to be taxed, nor is it making a tax levy. A judicial determination which establishes a proper amount of tax does not constitute a direct court exercise of the power of taxation. *Bryant v. Robbins*, 70 Wis. 258, 35 N.W. 545 (1887). The trial court did not find the statute to be unconstitutional, and we concur in that determination.

## V.  PERSONAL PROPERTY TAXES

Finally, the Village argues that the taxpayers were not entitled to recover any portion of the property taxes because the trial court failed to make findings that the taxpayers paid more than their equitable share. The Village asserts that the taxpayers failed to pay their equitable share of personal property taxes, and, they should, therefore, be denied recovery of the overpayment of their real estate taxes.

The trial court found that the Village's reassessment was void not only because the 1973 sale was not considered but also because the Village's reassessment included a revaluation of the 1972 *personal* property assessment. The accuracy of the personal property assessment was not in issue. The trial court held that this revaluation of the personal property was improper because the owners had never objected to the personal property assessment and the court had never ordered such a reassessment. Therefore, the assessor had no authority to reassess the personal property.

We agree with the trial court's findings. This was an action brought under sec. 74.73, Stats., to recover payment of an illegal *real estate* tax. The issue of the personal property assessment was not properly pleaded or

presented to the trial court, and we will not consider that issue on appeal. *Martin v. Liberty Mutual Fire Insurance Co.*, 97 Wis. 2d 127, 135, 293 N.W.2d 168, 172 (1980).

*By the Court.*—Judgment affirmed.