STATE EX REL. Florence R. KESSELMAN, Leo
Solocheck and Albert J. Goldberg d/b/a White
Chapel Investment Co., Petitioners-Respondents,

v.

BOARD OF REVIEW FOR the VILLAGE OF
STURTEVANT, Respondent-Appellant. †

Court of Appeals

*No. 85–1870. Submitted on briefs April 14, 1986.—Decided
August 6, 1986.*

(Also reported in 394 N.W.2d 745.)

† Petition to review denied.

For the respondent-appellant, the cause was submitted on the briefs of *Kenneth F. Hostak* of *Thompson & Coates, Ltd.*, of Racine, Wisconsin.

For the petitioners-respondents, the cause was submitted on the briefs of *Randall M. Aronson* of *Schoone, McManus, Hankel, Ware & Fortune, S.C.*, of Racine, Wisconsin.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.  This is an appeal from the circuit court's order requiring a reassessment of real estate owned by Florence R. Kesselman, Leo Solocheck and Albert J. Goldberg, d/b/a White Chapel Investment Co. Because the village assessor improperly based his assessment at least in part upon equalized value, we affirm that portion of the circuit court order which remands for reassessment. However, because the circuit court inappropriately ordered actual inspection of the

properties and consideration of an alleged sale of the properties which occurred after the original hearing and thus was not properly before the court, we reverse those portions of the order.

At issue is the January 1, 1984 property tax assessment of fourteen parcels of land within the Village of Sturtevant. Eleven eight-family apartment buildings and eight duplexes are situated on these parcels. The village assessor assessed the parcels collectively at a fair market value of $2,853,100;[1] White Chapel claimed the true fair market value was only $2,544,000. After a hearing[2] on White Chapel's objection to the assessment, the Village Board of Review confirmed the assessment.

White Chapel contended before the circuit court, upon a writ of certiorari, that the assessor used an incorrect method of assessment, arriving at a valuation twelve percent above the fair market value of the properties, and that the Board of Review arbitrarily refused to correct the overassessment.

The circuit court found that the assessor failed to use the "best information" available, pursuant to sec. 70.32(1), Stats., because he used only a drive-by inspec-

[1] Throughout this opinion, "assessed" value will refer to fair market value as estimated by the village assessor. For property tax purposes in 1984, property within the Village of Sturtevant was actually assessed at about 64% of fair market value; thus, the total actually assessed value of the White Chapel properties was $1,824,500.

[2] A hearing was held before the Village of Sturtevant Board of Review on May 14, 1984, from which White Chapel appealed to the circuit court by an action for certiorari. It subsequently being determined that, due to interference on the tapes of the May 14 hearing, no reasonable transcript of the proceedings could be made, the circuit court remanded the matter to the Board of Review for a further hearing. That hearing was held on December 17, 1984.

tion and did not consider comparable sales outside the Village of Sturtevant. The court[3] remanded the matter to the Board of Review for reassessment, ordering an actual inspection of the properties and consideration of both comparable sales and the "actual subsequent sale" of the properties. The Board of Review appeals.

Our scope of review, like that of the circuit court on certiorari, is strictly limited. The duties of boards of review are quasi-judicial and courts have no jurisdiction to disturb their findings or determinations except where they act in bad faith or exceed their jurisdiction. *State ex rel. Boostrom v. Board of Review*, 42 Wis.2d 149, 155, 166 N.W.2d 184, 187–88 (1969). The presumptions are all in favor of the rightful action of the board. *Id.* at 155, 166 N.W.2d at 188. The reviewing court may consider only: (1) whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment, and (4) whether the evidence was such that it might reasonably make the order or determination in question. *State ex rel. Geipel v. City of Milwaukee*, 68 Wis.2d 726, 731, 229 N.W.2d 585, 588 (1975).

Failure to make the assessment on the statutory basis is an error of law, correctable by the courts on certiorari. *Boostrom* at 156, 166 N.W.2d at 188. If the record shows that the assessor or the board excluded from consideration evidence entitled to consideration or if the assessor based his valuation on improper consid-

---

[3] A written decision signed by Judge Dennis D. Costello was entered on July 26, 1985. The order pursuant to that decision, signed by Judge John C. Ahlgrimm, was filed on August 29, 1985.

erations or went upon a false assumption or theory in determining the amount, the assessment will be set aside. *State ex rel. Park Plaza Shopping Center, Inc. v. Board of Review*, 61 Wis.2d 469, 475, 213 N.W.2d 27, 30 (1973).

In the present case, the Board of Review made no express findings on the record but simply voted to leave the assessment as it was. We construe this as an adoption of the assessor's reasoning and valuation.

Section 70.32(1), Stats., prescribes the method of real estate valuation by an assessor:

> Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale . . . .

Section 70.32(1), Stats., requires real estate to be assessed at its fair market value. *State ex rel. Markarian v. City of Cudahy*, 45 Wis.2d 683, 685, 173 N.W.2d 627, 629 (1970). Fair market value has often been defined as the amount the property could be sold for in the open market by an owner willing and able but not compelled to sell to a purchaser willing and able but not obliged to buy. *Id.*

The "best information" of fair market value is a sale of the property or, if there has been no such sale, then sales of reasonably comparable property. *Id.* at 686, 173 N.W.2d at 629. In the absence of such sales, the assessor may consider all the factors collectively which have a bearing on value of the property in order to

determine its fair market value. *Id.* Among these factors are costs, depreciation, replacement value, income, industrial conditions, location and occupancy, sales of like property, book value, amount of insurance carried, value asserted in a prospectus and appraisals procured by the owner. *Rosen v. City of Milwaukee*, 72 Wis.2d 653, 663, 242 N.W.2d 681, 685 (1976).

At the time of the hearing in question, the properties had never been sold, as White Chapel had built the apartment buildings and duplexes.

■

In the absence of an actual sale of the property, the assessor is required to examine sales of reasonably comparable property. *Markarian* at 686, 173 N.W.2d at 629. The circuit court found that the assessor failed to consider "comparative sales" outside the Village of Sturtevant. We disagree.

Although the assessor may have failed on his own to uncover comparable sales outside the village, at the hearing before the Board of Review the assessor considered the report and testimony of White Chapel's appraiser, Leonard Montalbano, including Montalbano's analysis of "comparables" from the Sturtevant-Racine area.[4] The assessor testified that he would not change

---

[4] Montalbano's "comparables" included six duplexes and seven eight- or four-family apartment buildings in Racine and Sturtevant, sold between May 1980 and January 1984.

The sale prices of the duplexes ranged from $53,100 to $65,000; as adjusted by Montalbano to compensate for physical condition, square footage and additional improvements, the sale prices ranged from $52,100 to $59,500. Montalbano appraised the eight White Chapel duplexes at $56,800 each, using both cost replacement and market comparison approaches. The village assessor valued six of the White Chapel duplexes at approximately $60,100 and two at approximately $64,750.

his opinion even after considering Montalbano's report. Thus, evidence of the comparables was before both the assessor and the Board of Review at the time of the hearing. *Cf. Superior Nursing Homes, Inc. v. City of Wausau,* 37 Wis. 2d 570, 577–78, 155 N.W.2d 670, 673 (1968). We are unable to conclude, on the record before us, that the comparables were not considered. The trial court erred in so finding.

The record does not divulge whether the assessor, or the Board of Review, found the Montalbano "comparables" not truly comparable to the properties in question[5] or had a different reason for declining to alter

The sale prices of the "comparable" eight-family apartment buildings ranged from $190,000 to $230,000, while two four-family comparables sold for $91,500 and $103,000. The adjusted sale prices ranged between $190,000 and $212,000 for the eight-family units and from $91,500 to $93,000 for the four-family units. Using the market comparison approach, Montalbano appraised the eleven White Chapel eight-family units at $190,000 each; using the cost replacement approach, the figure was $187,000 each. The village assessor's valuations of the White Chapel units ranged from $214,500 to $215,200.

We reject the Board of Review's contention that Montalbano's adjustment of the prices of the comparables evidences that they were not truly comparable to the White Chapel properties. The Wisconsin assessment manual discusses and explains in detail the adjustment process necessary to make reasonable comparisons between the subject property and comparable properties. *See* Vol. I, Property Assessment Manual for Wisconsin Assessors, at 7-12 to 7-15 (1982, 1984). Properties used for comparison need not be identical to the subject property but only "reasonably comparable." *See id.; Markarian* at 686, 173 N.W.2d at 629.

[5] Reasonable comparability depends upon the degree of similarity between the properties. *Rosen v. City of Milwaukee,* 72 Wis.2d 653, 665, 242 N.W.2d 681, 686 (1976). Important considerations in determining whether particular property is sufficiently similar to the

the assessment. The Board of Review contends on appeal that the "comparables" were not, in fact, reasonably comparable, in part because of their distance from the assessed properties and in part because of remoteness in time of some of the sales. Thus, the Board argues, the "comparables" were properly considered as merely sales of "like property," one of various factors relevant to valuation under the third step of the *Markarian* hierarchy. *See Rosen* at 663, 242 N.W.2d at 685.

We need not decide whether the assessor properly limited his consideration of "comparables." We hold that even if he could move to the third step, and examine multiple factors, he improperly considered equalized value to be an important factor in reaching an assessment.

■

Equalization is the state Department of Revenue's independent evaluation of the total value of real property within a municipality. Vol. I, *Property Assessment Manual for Wisconsin Assessors,* at 1–12 (1982). *See also* Wisconsin Department of Revenue "White Paper," The Uniform Valuation of Property: Wisconsin's Equalized Estimate of Taxable Values, at 1 (Rev. Aug. 1985). Equalized value is not a measure of fair market value of a particular parcel within the municipality but rather is a

property being assessed to warrant reliance on its sale price as evidence of market value include its location, including the distance from the assessed property; its business or residential advantages or disadvantages; its improvements, size and use. *Id.* It is also important to consider the conditions of sale, including its time in relation to the date of valuation and its general mode and character insofar as they tend to indicate an arm's-length transaction. *Id.*

131

test of the local assessor's overall valuations. *See Assessment Manual* at 1–12.

We are aware of no authority in the statutes or the assessment manual for use of equalized value by a local assessor in estimating fair market value of a particular parcel for property tax assessment purposes. The manual, in fact, stresses the equalization is concerned with equity between municipalities, while the local assessor's concern is properly with equity among individual property assessments. *See id.* at 1–13. The assessor is required to assess property based on fair market value. Sec. 70.32(1), Stats.; *Markarian* at 685, 173 N.W.2d at 629.

The village assessor clearly considered equalized value to be an important consideration.[6] Because equalized value is not a measure of the fair market value of individual properties, we conclude that the assessor

---

[6] The assessor stated at the hearing:

[T]he normal home in the Village of Sturtevant is assessed between the 32 to $35,000 level. The average sale price of those homes run anywhere from 47 to $55,000 on an average single-family unit. When you put everything together and look at the rental properties, be it an eight-family unit, be it a duplex, be it a commercial property, the issue at hand that the Board of Review has to decide is when you look at the values that we have put on the White Chapel properties, they're representative of that equalized value. The discussion that we are really at is Mrs. Kesselman is arguing the estimated fair market value of her property is wrong. I contend in order to maintain equity and a consistent assessment base, if the Board sees wisdom to lower the White Chapel valuation, the whole village would have to be adjusted and no property owner would find themselves better off. In fact, you would have to have the mil rate raised to collect the same amount of revenue. So it's a bigger issue than just looking at the White Chapel properties .... [T]he issue is more at hand when you look at the equalized value as it impacts the assessment roll within the Village of Sturtevant.

rested upon a false assumption or theory in determining his valuation and based it on improper considerations. *See Park Plaza Shopping Center*, 61 Wis.2d at 475, 213 N.W.2d at 30. Therefore, we affirm the circuit court's order remanding the matter to the Board of Review for reassessment of the White Chapel properties.[7]

We now turn to whether the circuit court erred in requiring, on remand, an actual inspection of the properties and consideration of "the actual subsequent sale of the subject property." We hold that it did.

As to the first issue, fair market value may be determined either from actual view of the property *or* from the "best information" the assessor can obtain. Sec. 70.32(1), Stats. Actual view is not required by the statute. *State ex rel. Kaskin v. Board of Review*, 91 Wis.2d 272, 277–78, 282 N.W.2d 620, 622 (Ct. App. 1979). There was evidence before the Board of Review that the village assessor had been familiar with the White Chapel properties for fourteen years. Therefore, there was no legal basis for the circuit court's order requiring an actual inspection of the properties on remand. We reverse that portion of the order.

As to the second issue, at the hearing, over the objection of the Village, Florence (Kesselman) Slavick testified concerning a letter of intent to purchase the properties, received a week or two previously. The letter

---

[7] It is well-established that if a trial court reaches the proper result for the wrong reason, it will be affirmed. *State v. Holt*, 128 Wis.2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985). An appellate court may sustain a trial court's holding on a theory or on reasoning not presented to the trial court. *Id.* at 125, 382 N.W.2d at 687. Thus, even if the equalization question was not specifically argued below, we may reach it.

contained an offer to purchase all the properties in question for $1,350,000. Mrs. Slavick testified that the partners had not yet met to discuss whether or not to accept the offer. Thus, at the time of the hearing, there was no evidence of an actual sale of the properties which, if present, would have alone provided the "best information" of fair market value under the *Markarian* hierarchy.

Review on certiorari is restricted to the record before the board. *State ex rel. Hemker v. Huggett*, 114 Wis.2d 320, 323, 338 N.W.2d 335, 336 (Ct. App. 1983). The reviewing court may not conduct its own factual inquiry unless authorized by the statute directing certiorari. *Id.* In ordering the Board of Review to consider on remand the "actual subsequent sale" of the properties, the circuit court went beyond the record.

However, although the circuit court was without authority to order the Board of Review to consider, on remand, a "fact" not properly before the court, if upon remand evidence of an actual arm's-length sale is put before the assessor or the Board of Review, that information would provide a proper basis for the reassessment. *See Fontana v. Village of Fontana-On-Geneva Lake*, 107 Wis.2d 226, 233 and n.2, 319 N.W.2d 900, 903 (Ct. App. 1982), *aff'd*, 111 Wis.2d 215, 330 N.W.2d 211 (1983).[8]

---

[8] In *Fontana*, no board of review hearing took place; the circuit court proceedings constituted a trial on the merits rather than a review on certiorari. Thus, the rule limiting review to the record before the board was inapplicable. For the proposition that sale price may be used to determine market value even where the sale is subsequent to the assessment, the *Fontana* court cited *State ex rel. Geipel v. City of Milwaukee*, 68 Wis.2d 726, 229 N.W.2d 585 (1975), and

We therefore remand to the circuit court to return this matter to the Board of Review for reassessment consistent with this opinion.

No costs to either party.

*By the Court.*—Order affirmed in part; reversed in part, and cause remanded with directions.

---

*State ex rel. Evansville Mercantile Association v. City of Evansville,* 1 Wis.2d 40, 82 N.W.2d 899 (1957). Neither *Geipel* nor *Evansville* involved a sale occurring after the board of review hearing. Thus, again, reference to the rule limiting review to the record was not necessary. In the present case, although we agree that upon reassessment the assessor should consider any evidence presented regarding an actual sale, we are constrained to recognize the limits on the circuit court upon certiorari.