STATE of Wisconsin EX REL. WISCONSIN EDISON CORPORA-
TION, a domestic corporation, and Peter H. Burno,
Plaintiffs-Appellants,

v.

Howard ROBERTSON, Clerk of the Town of Porter,
Defendant-Respondent.

Court of Appeals

*No. 79–1910. Submitted on briefs September 15, 1980.—
Decided November 24, 1980.*
(Also reported in 299 N.W.2d 626.)

For the petitioners-appellants the cause was submitted on the briefs of *Stephen P. Hurley* and *Pieper & Hurley* of Stoughton.

For the respondent the cause was submitted on the brief of *Jeffrey T. Roethe* and *Roethe, Buhrow, Roethe & Pope* of Edgerton.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J.   This is an appeal from a judgment quashing a petition for a writ of certiorari taken to review the 1978 assessment of petitioner's real estate. The issue is whether the assessment was made at the property's fair market value.

The Stebbinsville dam is located on the Yahara River in the Township of Porter, seven miles southeast of Stoughton. It was constructed in 1917 to generate electricity and consists of the dam, a 4½ acre pond, a powerhouse and a caretaker's residence. The City of Stoughton electric utility, which owned the Stebbinsville facility, discontinued using it to generate electricity and became interested in selling the entire 7½ acre facility. It hired

an appraiser who placed a $1.00 value on the facility as of August 9, 1974.

Peter Burno is a retired power engineer who wanted to own and experiment with small hydroelectric facilities. He had been the consulting engineer on a phase of the Grand Coulee dam and the Ludington pump storage plant. In 1967, he was hired to design and effect some rebuilding of the Stebbinsville generator, and in 1969 began negotiations to purchase the facility. On October 14, 1974, the Wisconsin Edison Corporation (Wisconsin Edison), whose shares are wholly owned by Burno, purchased the Stebbinsville facility from the City of Stoughton for $1.00.

The Township of Porter assessed the Stebbinsville facility at $88,000[1] for 1978.[2] Wisconsin Edison contested that assessment. The town board of review sustained the assessment, and the circuit court affirmed the board of review.[3]

At the hearing before the town board of review, Mr. Burno produced three witnesses and a number of documents from which the following uncontroverted facts are taken.

In 1941, about 40 percent of Wisconsin's electrical energy was produced by water power. By 1977, that figure had decreased to about 5 percent. During that period, electric generation was discontinued at about 600 small dams in Wisconsin, such as the Stebbinsville facility. The total loss in generating capacity was about 12,000 kilowatts. During the same period, about 15 large hydroelectric plants were constructed with a total gen-

[1] The assessment was $4,947. The equalized assessment or fair market value was $88,008.

[2] For reasons not pertinent to this appeal, the Stebbinsville facility was not taxed as real property for the years 1975 to 1977.

[3] The assessment was actually reduced to $88,000, and a special meeting of the board of review was held for reasons not pertinent to this appeal.

erating capacity of about 200,000 kilowatts. No new dams have been constructed since 1949.

Small hydroelectric facilities have been discontinued for primarily economic reasons, though overregulation is to some extent responsible, as is the difficulty of getting parts and service. Electric utilities have been divesting themselves of their small hydroelectric facilities, but the Wisconsin Department of Natural Resources (DNR)[4] has required that all dams be in good repair before their transfer. This is expensive; it cost about $210,000 to put the Stebbinsville facility in good condition before it was transferred to Wisconsin Edison.[5] Dams are also expensive to maintain; the Stebbinsville dam alone needs $3,000 to $4,000 of maintenance per year. The cost of generating electricity from a small hydroelectric facility has exceeded the value of the electricity produced so that most small dams are no longer used for that purpose.

Other difficulties attend the ownership of a dam. Persons purchasing dams must show proof of financial ability to maintain the dam for not less than 10 years.[6] Mr. Burno satisfied this requirement by posting a $75,000 letter of credit from a local bank. The department of natural resources regulates the public use of the water impounded by a dam; Mr. Burno found that he was in effect "running a public park on behalf of somebody—the town or the county or whoever runs public parks." This takes almost a day of labor per week during the summer. The department requires water levels to be maintained, necessitating the owner or an employee to be on duty at all times.

---

[4] State regulation of dams is provided by ch. 31, Stats., which is administered by DNR.

[5] A division manager for Wisconsin Power & Light Co. testified that Wisconsin Power & Light had spent over $100,000 on a dam prior to selling it for $1.00.

[6] This is required by sec. 31.14(2)(a), Stats.

The owner of a dam may not sever any of the land surrounding the dam without the permission of DNR. The department looks unfavorably at requests to sever land from a dam site because of a prior experience with an unscrupulous real estate developer who severed and sold land adjoining a dam, abandoned the dam so that its maintenance costs fell on the public, and then left the state.

Mr. Burno or Wisconsin Edison spent $210,000 on the Stebbinsville dam and $40,000 on the caretaker's residence prior to the time Wisconsin Edison purchased the facility. About $30,000 was spent on the generator after the purchase. The house is now used as Mr. Burno's residence and the corporate headquarters of Wisconsin Edison. The corporation carries $30,000 of insurance on the house and its contents, but is unable to purchase liability insurance for the area surrounding the dam.

For all these reasons, the ownership of dams has not proven popular. It is not surprising that every dam sold since 1941 has been sold for $1.00.

The standards of review of an assessment in the trial court and this court were set out in *State ex rel. Boostrom v. Board of Review,* 42 Wis.2d 149, 155, 166 N.W.2d 184, 187–88 (1969) :

"The principles of law are well settled governing the jurisdiction of courts in reviewing the findings of boards of review on *certiorari.* The duties of boards of review are *quasi*-judicial and courts have no jurisdiction to disturb their findings or determinations except where they act in bad faith or exceed their jurisdiction. Judicial review of the action of boards of review on *certiorari* extends only to jurisdictional errors. If a board of review does not act arbitrarily or dishonestly and the evidence presented before it is sufficient to furnish any substantial basis for the valuation found by the board, its decision will not be disturbed. The review here extends only to correction of jurisdictional errors and does not

include mere errors of judgment as to the preponderance of the evidence. Upon *certiorari* to a nonjudicial body such as a board of review, the court will review the evidence only so far as to ascertain if there is reasonable ground for belief that the decision is the result of honest judgment, in which case it will not be disturbed. This court will review the proceedings to ascertain whether such body has kept within its jurisdiction and whether such board acted upon competent evidence sufficient to give it jurisdiction. The presumptions are all in favor of the rightful action of such board. The assessor's valuation of property is *prima facie* correct and is binding upon the board of review in the absence of evidence showing it to be incorrect." [Quoting *State ex rel. Pierce v. Jodon,* 182 Wis. 645, 647–48, 197 N.W. 189, 190 (1924).]

In addition, failure to make the assessment on the statutory basis is an error of law and correctable by the courts on certiorari. If the trial court finds upon the undisputed evidence before the board that the assessment has not been fixed upon the statutory basis, the assessment should be set aside. (Citations omitted.)

The statutory basis for real estate assessments is sec. 70.32, Stats., which provides in part:

(1) Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, *at the full value which could ordinarily be obtained therefor at private sale.* (Emphasis added.)

In *Rosen v. Milwaukee,* 72 Wis.2d 653, 661, 242 N.W.2d 681, 684 (1976), the court said:

This court has consistently construed the statute to mean that real property must be assessed on the basis of its "fair market value." That is, the amount it will sell for upon negotiations in the open market between an owner willing but not obliged to sell and a buyer willing but not obliged to buy.

We must therefore determine whether the Stebbinsville dam was assessed on the basis of its fair market value

in order to adjudge whether the assessment should be set aside.

In *State ex rel. Markarian v. Cudahy*, 45 Wis.2d 683, 868, 173 N.W.2d 627, 629 (1970), the court discussed methods of arriving at a property's fair market value:

The "best information" of such value is a sale of the property or if there has been no such sale then sales of reasonably comparable property. In the absence of such sales, the assessor may consider all the factors collectively which have a bearing on value of the property in order to determine its fair-market value. However, it is error to use this method "when the market value is established by a fair sale of the property in question or like property." *State ex rel. Enterprise Realty Co. v. Swiderski* (1955), 269 Wis. 642, 645, 70 N.W.2d 34, 35. The statutory rule of assessment of real estate is restricted to its sale value in the open market and is not concerned with its intrinsic value if the intrinsic value differs either more or less from the sale value. *State ex rel. Northwestern M. L. Ins. Co. v. Weiher*, (1922), 177 Wis. 445, 448, 188 N.W. 598.

The sale of the property must be recent to preclude the assessor's use of all the factors collectively which have a bearing on the value of the property. *Rosen, supra. State ex rel. Hensel v. Town of Wilson*, 55 Wis.2d 101, 197 N.W.2d 794 (1972). We cannot conclude that the sale by which Wisconsin Edison acquired the dam in October of 1974, would be "recent" on January 1, 1978.[7] The supreme court held that a one-year difference between assessment date and sale of a comparable property did not render testimony concerning sales of comparable property incompetent on the issue of market value. *Rosen, supra*. A three year old sale is another matter, particularly in recent inflationary times. The assessor

[7] Section 70.10, Stats., requires real estate assessments to be made as of January 1 of each year.

was not required to use the sale price of $1.00 as the property's fair market value on January 1, 1978, though that amount is one of the factors having a bearing on the value of the property.[8]

The statutory test of fair market value works well in most cases. It is not particularly well suited to the appraisal of dams because, at least on the Stebbinsville dam, much of the "value," in terms of cost or money expended, is intrinsic. The supreme court has not decided an assessment case involving a dam, but has held that a golf course[9] and an opulent corporate headquarters[10] were to be assessed at their fair market value which did not include intrinsic value. The occasional anomaly caused by a fair market value assessment was discussed by the supreme court in *State ex rel. Northwestern M. L. Ins. Co.*, 177 Wis. at 449, 188 N.W. at 599:

It is also urged that the building under an assessment of market value only is considered for a purpose for which it was not intended and is therefore not assessed at its full value based upon the purpose for which it was constructed. This also is true; but since the statute fixes the test, and has maintained it as it is for half a century or more, we must assume the legislature is well satisfied with it. At any rate the courts cannot change it. That it is the best test that can possibly be devised we have no

[8] The October 14, 1974 sale was between a willing buyer and seller. Neither was *compelled* to act as that term is defined in *State ex rel. Lincoln F. Warehouse v. Bd. of Rev.*, 60 Wis.2d 84, 208 N.W.2d 380 (1973) and *State ex rel. Evansville Merc. Asso. v. Evansville*, 1 Wis.2d 40, 82 N.W.2d 899 (1957). The substantial investment by Mr. Burno or Wisconsin Edison prior to the sale is evidence of the property's intrinsic value to Mr. Burno or Wisconsin Edison. Intrinsic value does not meet the statutory test. *State ex rel. Northwestern M. L. Ins. Co. v. Weiher*, 177 Wis. 445, 188 N.W.2d 598 (1922).

[9] *State ex rel. Oshkosh Country Club v. Petrick*, 172 Wis. 82, 178 N.W. 251 (1920).

[10] *State ex rel. Northwestern M. L. Ins. Co. v. Weiher*, 177 Wis. 445, 188 N.W.2d 598 (1922).

doubt. As to the great mass of taxable real estate it furnishes the only fair and safe touchstone—one that extrinsic facts—actual sales of like or similar property —can conclusively establish; thus in as large a measure as possible eliminating the mere judgment of the assessor, and enabling an owner or the assessor, as the case may be, to prove the valuation by facts which he has had no part in establishing or shaping and which do not lie solely in any man's judgment. It is true that in cases such as this too low a valuation seems at first blush to be established for taxation purposes.

The ownership of land has often been referred to as a bundle of rights.[11] The ownership of a dam also includes some disadvantages or liabilities which, as is apparent from the record in this case, dramatically affect the price at which dams change hands. Absent a recent sale of the property or comparable property as evidence of the fair market value, the assessor is required to consider these liabilities as factors which affect the fair market value of the property.[12]

The town assessor used the property assessment manual for Wisconsin assessors to assess the caretaker's house,

---

[11] Real property ownership involves the Bundle of Rights Theory which asserts that the owner has the right to enter it, use it, sell it, lease it, or give it away, as he so chooses. These rights are guaranteed by law but they are subject to certain governmental and private restrictions. *Property Assessment Manual for Wisconsin Assessors* Vol. II at 1–1 (1978). *See also Mitchell Aero, Inc. v. Milwaukee*, 42 Wis.2d 656, 168 N.W.2d 183 (1969).

[12] In *State ex rel. Markarian v. Cudahy*, 45 Wis.2d 683, 173 N.W.2d 627 (1970), the court held that an assessor erroneously failed to make an allowance for or consider the fact that the grade level of an adjacent street decreased the value of a building lot. In *State ex rel. Garton Toy Co. v. Mosel*, 32 Wis.2d 253, 145 N.W.2d 129 (1966), the court held that an assessor erroneously failed to consider the taxpayer's evidence of the fair market value of inventory.

but did not consider the evidence produced by the taxpayer which showed the likelihood that a purchaser of the house would have to take the dam, pond and powerhouse along with the home. The house may well have a substantial value, but the package has numerous liabilities which may greatly decrease the fair market value of each individual item. The assessor testified that as to the powerhouse, "I didn't really go by measurements or anything. I just figured it worth a little something, and I put $50 on which I don't believe is unfair." The land was assessed at $1,000[13] because the assessor believed the facility was a commercial property and that the assessment was not unfair. She was certain Mr. Burno could sell the land for $36,000, but assumed the facility was operating at a profit. Her basis for that assumption was her belief that Mr. Burno would not invest $250,000 in the dam because it pleased him to do so. The uncontroverted evidence showed her assumption to be incorrect. Though the basis for the $1,000 assessment is unclear, that evidence showed that if the assessor was using a rough "income approach,"[14] the facility probably operated at a loss.[15] An assessment based on the income approach cannot be based upon an assumption that an enterprise is operating at a profit unless the assessor has some rational basis for that assumption.

---

[13] The equalized assessment appears to be $17,953.

[14] A capitalized income approach assumes that a property is worth an amount equal to the net income produced by the property multiplied by a factor which indicates the rate of return an investor would expect on his investment in the property. *Soo Line R. Co. v. Department of Revenue*, 89 Wis.2d 331, 278 N.W.2d 487 (Ct. App. 1979).

[15] The net income from the Stebbinsville dam is difficult to calculate from the record before us because at least two dams produced Wisconsin Edison's gross profit of $12,102.50. Wisconsin Edison's expenses were $3,000 to $4,000 maintenance on the Stebbinsville dam, plus unknown operating expenses, plus depreciation on an investment of at least $242,000.

Although Mr. Burno demonstrated that the liabilities which attend ownership of the property drastically reduce its fair market value, the board of review sustained the assessment.

If there be adduced before the board competent evidence which is unimpeached and which shows that the assessor's valuation is incorrect, such evidence cannot be disregarded by the board. Disregard of such evidence is considered jurisdictional error. *State ex rel. I.B.M. Corp. v. Board of Review,* 231 Wis. 303, 306, 285 N.W. 784, 785 (1939).

In this case, the board discussed the assessment but did not consider the required statutory test. Board member Hatlen commented, "Nobody else can live in a house without paying taxes in this country." Board members Towns and Viney felt the tax, between $1,100 and $1,200, was not too much for a business and a home. The assessor was the fourth board member who considered the assessment. Unfortunately the town's attorney misinformed the board that the test was "whether or not the assessment is a fair assessment based upon the evidence received," though at an earlier time he had used the term "fair market value" in an ambiguous context. It is unclear on what basis the assessor did assess the property. " '[T]he task of the appraiser is to determine, as accurately as he can, the amount which the property *would* bring in the period for which the assessment is made, both buyer and seller being *willing and able* to deal.' " *State ex rel. Mitchell Aero v. Bd. of Review,* 74 Wis.2d 268, 277–78, 246 N.W.2d 521, 526 (1976), quoting *State ex rel. Baker Mfg. Co. v. Evansville,* 261 Wis. 599, 608–09, 53 N.W.2d 795, 800 (1952).

This was not done. The evidence presented to the board furnishes no substantial basis for the assessment. Nor was the assessment made on the statutory basis of

fair market value. We therefore conclude that the assessment should not have been approved by the board of review and the circuit court should have set the assessment aside. We do not find the value of Wisconsin Edison's property; that is not the function of a court on certiorari in the usual case. *State ex rel. Markarian, supra.*

*By the Court.*—Judgment reversed and cause remanded with directions to set aside the 1978 property tax assessment.