DARCEL, INC., Plaintiff-Respondent,

v.

CITY OF MANITOWOC BOARD OF REVIEW,
Defendant-Appellant. †

Court of Appeals

*No. 84–2470. Submitted on briefs August 30, 1985.—*
*Decided December 11, 1985.*
(Also reported in 381 N.W.2d 575.)

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

For the defendant-appellant, briefs were filed by *Patrick L. Willis,* city attorney of Manitowoc.

For the plaintiff-respondent, a brief was filed by *Peter W. Deschler* and *Joan Ravanelli Miller* of *Nash, Spindler, Dean & Grimstad* of Manitowoc.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   This case involves a challenge to the property tax assessment of a shopping mall. We are asked to decide whether the recent sales price of stock in Darcel, Inc. (Darcel), a corporation which owns the shopping mall, establishes its fair market value for assessment purposes when the sales price is based on contract rents which are lower than market rents.[1] The City of Manitowoc Board of Review (the board) contends that market rents must be considered in assessing the value of a parcel of property when an assessor determines that contract rents are inadequate.

The board upheld the Manitowoc City Assessor's (assessor) assessment which was based upon factors in addition to the sales price. Darcel petitioned for certiorari review under sec. 70.47(13), Stats., contending that the property should be assessed based upon the recent arm's-length sale of Darcel's stock plus the value of recent improvements. The board appeals from the circuit court's order remanding the case to the board with directions to consider the recent sales price of the property as its value for tax assessment purposes. We affirm the order of the circuit court.

Darcel owns a shopping center in the city of Manitowoc known as the Mid-Cities Mall. The city assessor assessed the value of the mall at $5,231,900 for the 1984 tax year. Darcel filed a written objection to the

_____

[1] Darcel, Inc. owned the shopping mall as its only asset. The parties do not argue on appeal that the sales price of the stock is not equivalent to the sales price of the mall.

property assessment pursuant to sec. 70.47(7), Stats., contending that the property should properly be assessed at $4,130,000.

On June 20, 1984, the board held a hearing on Darcel's objection. Brooks Kellogg, president of Darcel, testified that the current shareholders purchased their interests in Darcel in August 1983 for $4,100,000 and following their acquisition of the stock the shareholders invested $30,000 in the property. Irv Lazarus, a Darcel shareholder, testified that the corporation was bound by leases negotiated in 1968 which encumber the property for another fifteen years. The two largest tenants in the mall were only paying $1.09 per square foot under the 1968 leases. Darcel contended the assessed value for the property as of January 1, 1984 should be the sum of the purchase price paid for the stock which reflected the deferred maintenance to bring the mall up to current standards, the outdated leases and the net operating income, plus the value of the improvements.[2]

The city assessor concluded that the price paid for the Darcel stock did not accurately reflect the fair market value of the property. He opined that the sale of the property was not made at arm's length, and he testified that, in accordance with the directives of the Wisconsin Property Assessment Manual (assessment manual), he assessed the value of the entire property—the lessor's and the lessees' interests. Because the rent received from the property appeared inadequate—stores at a shopping center across the street were paying at least $7.50 per square foot while tenants in the Mid-

---

[2] The record reveals that there was $850,000 of deferred maintenance which was necessary to be done to bring the mall up to current standards.

Cities Mall were paying only $1.09 per square foot—the city assessor conducted a market study of recent shopping mall sales to arrive at his assessed value of the Mid-Cities Mall.

At the conclusion of the hearing, the board voted to sustain the city assessor's assessment. The circuit court granted Darcel's petition for a writ of certiorari and reversed the board's determination. The circuit court determined that the board had ignored competent evidence of a recent sale of the property at fair market value and ordered the board of review to amend its findings. The board appeals.

■

The principles governing jurisdiction of courts in reviewing the findings of boards of review on certiorari are well-settled. *State ex rel. Wisconsin Edison Corp. v. Robertson,* 99 Wis.2d 561, 565, 299 N.W.2d 626, 628 (Ct. App. 1980). It is not the function of the courts to make an assessment of property or to order that an assessment be entered at any fixed sum. *Rosen v. City of Milwaukee,* 72 Wis.2d 653, 661, 242 N.W.2d 681, 684 (1976). Their only function is to determine, from the evidence presented to the board of review, whether the valuation was made on the statutory basis. *Id.* Failure to make the assessment on the statutory basis is an error of law correctable by the courts on certiorari. *Robertson* at 566, 299 N.W.2d at 629.

■

The presumptions all favor rightful action of the board. *State ex rel. Boostrom v. Board of Review,* 42 Wis.2d 149, 155, 166 N.W.2d 184, 188 (1969). The burden of producing evidence to overcome the presumption is on the person attacking the assessment and the presumption survives until met by credible evidence.

*State ex rel. Collins v. Brown,* 225 Wis. 593, 596, 275 N.W. 455, 456 (1937). If there is competent evidence adduced before the board which shows that the assessor's valuation is incorrect, such evidence cannot be disregarded by the board. *State ex rel. Evansville Mercantile Association v. City of Evansville,* 1 Wis.2d 40, 42–43, 82 N.W.2d 899, 901 (1957). Disregard of such evidence is considered jurisdictional error. *Id.* at 43, 82 N.W.2d at 901; *Collins* at 595, 275 N.W. at 456.

Section 70.32, Stats., provides the statutory basis for real estate assessments:

**Real estate, how valued.** (1) Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale.

Local assessors are required to value real property in the manner specified in the assessment manual prepared by the Wisconsin Department of Revenue. *See* secs. 70.32(1) and 73.03(2a), Stats. The purpose of the assessment manual is to discuss and illustrate acceptable assessment methods, techniques and practices "with a view to more nearly uniform and more consistent assessments of property at the local level." Section 73.03(2a).

Section 70.32, Stats., has been consistently construed to mean that real property must be assessed on the basis of its fair market value. *State ex rel. East Briar, Inc. v. Board of Review,* 113 Wis.2d 33, 36, 334

N.W.2d 692, 694 (Ct. App. 1983); *Rosen,* 72 Wis.2d at 661, 242 N.W.2d at 684. "Fair market value of land is the 'amount it will sell for upon negotiations in the open market between an owner willing but not obliged to sell and a buyer willing but not obliged to buy.' " *East Briar* at 36–37, 334 N.W.2d at 694, quoting *Rosen* at 661, 242 N.W.2d at 684. *See also* 1 *Wisconsin Property Assessment Manual for Wisconsin Assessors,* Real Property Valuation, 7–3 (Rev. 12/82).

The method and considerations which assessors must utilize in order to comply with the statutory requirement that the fair market value be ascertained on the basis of the "best information" available were stated in *State ex rel. Markarian v. City of Cudahy,* 45 Wis.2d 683, 686, 173 N.W.2d 627, 629 (1970):

The "best information" of such value is a sale of the property or if there has been no such sale then sales of reasonably comparable property. In the absence of such sales, the assessor may consider all the factors collectively which have a bearing on value of the property in order to determine its fair market value. . . . The statutory rule of assessment of real estate is restricted to its sale value in the open market and is not concerned with its intrinsic value if the intrinsic value differs either more or less from the sale value. [Citation omitted.]

*See also Assessment Manual* at 7–3.

It is well-settled in Wisconsin that when an actual sale of the property under consideration has occurred, it is error to consider extrinsic factors in determining the fair market value of the property. *See, e.g., State ex rel. Geipel v. City of Milwaukee,* 68 Wis.2d 726, 734, 229 N.W.2d 585, 589 (1975); *see also Assessment Man-*

*ual* at 7–12. There may be situations, however, in which the actual sales price is not a valid indication of fair market value.[3] *Geipel* at 734, 229 N.W.2d at 589. The sale must be a fair, arm's-length transaction without compulsion or pressure on either party. *Id.* The assessment manual defines an arm's-length transaction as "one in which both buyer and seller are knowledgeable of the property and the market, neither are compelled to act, the length of time the property was on the open market was the normal length of time for properties of that type, and there is no relationship between buyer and seller." *Assessment Manual* at 7–13.

---

[3] The board contends that under the rationale of *State ex rel. Geipel v. City of Milwaukee,* 68 Wis.2d 726, 229 N.W.2d 585 (1975), a lease encumbering a piece of property that does not produce market rents should not be used to determine the value of the property. The board relies on the following statement for its conclusion:

There may well be situations where [an option price], especially if agreed upon well in advance of the assessment date, may not adequately reflect changing conditions such as development of adjacent land, which increase the market value of the property to an extent not contemplated when the option price was agreed upon.

*Id.* at 737, 229 N.W.2d at 591.

We reject the board's contention that this language from *Geipel* governs the situation we are presented with here. Our reading of *Geipel* persuades us that the court contemplated a situation where an old option price is used to establish the fair market value of property years later. In this case, however, while the leases were negotiated many years ago, stock in the corporation was sold within months of the date on which the property was assessed. Therefore, the price used to establish the fair market value of the property in this case is not an old price "agreed upon well in advance of the assessment date" referred to in *Geipel.*

In this case, there was a recent sale of the property in question[4] and it is undisputed that the assessor considered factors in addition to the sales price of the mall. This court must therefore determine whether the evidence supports the board's determination that the sales price of the property was not the best information of its fair market value. In such a review, one must bear in mind that the burden rests with the taxpayer challenging the assessment. *State ex rel. Lincoln Fireproof Warehouse Co. v. Board of Review,* 60 Wis.2d 84, 89–90, 208 N.W.2d 380, 383 (1973); *City of Evansville* at 43–44, 82 N.W.2d at 901. The inquiry, therefore, is whether Darcel met its burden of showing that the sale was made under normal conditions so as to lead to the conclusion that the price paid was that which could ordinarily be obtained for the property. If those conditions are met, there is no occasion to consider other factors and it is wrong to do so. *Id.* at 44, 82 N.W.2d at 901.

Our review of the record in this case persuades us that the sale of the shopping mall was a fair transaction made at arm's length.[5] The record reveals that the

---

[4] Stock in Darcel was sold approximately four months prior to the assessment date on January 1, 1984. In *Rosen v. City of Milwaukee,* 72 Wis.2d 653, 242 N.W.2d 681 (1976), the court held that a one-year difference between the assessment date and sale of a comparable property did not render testimony concerning the sale of the comparable property incompetent.

[5] We thus reject the board's contention that once the assessor determined that the contract rents for the property were inadequate he was required to determine the market rents for the property pursuant to the directives of the Wisconsin property assessment manual. The board relied upon the following portion of the

assessment manual's discussion of the income approach to commercial property valuation where it states:

Market rent rather than the actual, or contract rent is to be used in estimating potential gross income. The contract rent may reflect conditions that existed many years ago, and thus if used will not provide a true indication of the present fair market value of the property. This position is supported by the recent court decision in *Wisconsin Department of Revenue v. Radtke and Herro, Dane County Circuit Court, Case No. 79–CV–5952.*

1 *Wisconsin Property Assessment Manual for Wisconsin Assessors,* Commercial Property Valuation, 9–8 (Rev. 12/84).

Our reading of the assessment manual reveals, however, that prior to its discussion on the income approach, the assessment manual provides:

Where there is a sale of the property itself, the assessor must give consideration to that sale. If it is an arm's-length transaction, and if it is the best information available, the assessor must use the sale price as a basis for the assessment.

*Id.* at Real Property Valuation at 7–3, 7–4. The assessment manual clearly states that it is only in the absence of a recent sale of the subject property that the assessor may resort to the cost or income approaches or any other information that provides an indication of market value. *Id.* at 7–12, 7–13, 7–19.

Similarly, we conclude that *Wisconsin Department of Revenue v. Radtke,* No. 79–CV–5952, slip op. (Dane County Cir. Ct. April 18, 1980), cited in the assessment manual for the proposition that the fair market value of the property should be established by reliance on the economic rent (market rent) rather than contract rent, is inapposite. In *Radtke,* the court was not dealing with an assessment of a property which was recently sold. Moreover, the *Radtke* case reiterates the principle that it is only where the market value is *not* established by a sale that the assessor or the board should consider other factors bearing on market value.

the property and the market and that neither party was compelled to act.[6] The record shows that other potential buyers existed with whom the sellers negotiated in addition to the ultimate buyers. We agree with the trial court that the fifteen months the property was on the market and the six months of negotiations leading to the sale cancel any suggestion that this was a panic sale by the seller. *Cf. Geipel* at 735–36, 229 N.W.2d at 589–90.

We can find no reason in the record to suppose that the property would bring any more from another buyer willing but not obliged to buy. While the intrinsic value of the mall may be greater, it is the sales price which controls assessments where there has been a recent sale of the property made at arm's length. *City of Evansville* at 45, 82 N.W.2d at 902.

We conclude that the fair market value of the property was established by this sale and that other evidence tending to show what the market value might be, to which resort might be made in the absence of such a sale, may not be used here to cast aside the evidence of the market itself. Our review of the record shows that there was competent evidence of a recent sale before the board. The city assessor and the board erred in rejecting the sales price of the mall as evidence of its fair market value. This disregard of the recent

---

[6] We do not view the evidence that the seller poorly managed the mall as indicative of the seller's lack of knowledge about the property or of a necessitous circumstance. Rather, such evidence may reflect the willingness of the seller to deal rather than his compulsion to sell. *Cf. State ex rel. Lincoln Fireproof Warehouse Co. v. Board of Review*, 60 Wis.2d 84, 97–99, 208 N.W.2d 380, 387 (1973).

sales price constitutes jurisdictional error; therefore, the assessment must be set aside.

We feel compelled to comment on our recent decision in *State ex rel. Flint Building Co. v. Kenosha County Board of Review,* 126 Wis.2d 152, 376 N.W.2d 364 (Ct. App. 1985), in light of our holding in the present case. In *Flint,* we held that the sales price of property is not conclusive evidence of its fair market value where the financing terms of the sale may affect its full value. We concluded that when it is determined that the payment received by the seller is not in cash or its equivalent, use of the cash equivalency adjustment should be considered to remove the special effects of financing from the sales price. In our view, the distinction between *Flint* and the present case lies in the fact that in *Flint* we were dealing with the effect of negotiated financing terms on the sales price. Here, we are dealing with the effect of leases negotiated with third parties on the sales price. We perceive a significant distinction between cases wherein negotiations between the buyer and seller as to favorable financing terms affect the sales price as opposed to cases where the sales price is affected by an encumbrance on the property over which the buyer has no control.

*By the Court.*—Order affirmed.