VILLAGE OF SHOREWOOD, a municipal corporation, Petitioner-Condemnor-Appellant-Petitioner,

v.

Robert A. STEINBERG, Hiram A. Dorfman, Mark E. Schussel, and First Bank, N.A., Condemnees-Respondents.

Supreme Court

*No. 91–0506. Oral argument November 30, 1992.—Decided February 24, 1993.*

(Also reported in 496 N.W.2d 57.)

192

194

For the petitioner-condemnor-appellant-petitioner there were briefs by *Hugh R. Braun, M. Susan Maloney* and *Godfrey, Braun & Hayes,* Milwaukee and oral argument by *Hugh R. Braun.*

For the condemnees-respondents there was a brief by *Alan Marcuvitz, Andrea Roschke* and *Weiss, Berzowski, Brady & Donahue,* Milwaukee and oral argument by *Alan Marcuvitz* and *Andrea Roschke.*

LOUIS J. CECI, J. This case comes before the court on the Village of Shorewood's petition for review of a published court of appeals decision, *Village of Shorewood v. Steinberg,* 166 Wis. 2d 794, 480 N.W.2d 780 (Ct. App. 1992). The court of appeals decision affirmed an order of the circuit court for Milwaukee County, Francis T. Wasielewski, Circuit Judge, which awarded litigation expenses under sec. 32.28(3)(d), Stats., to condemnees Robert A. Steinberg, Hiram A. Dorfman, Mark E. Schussel, and First Bank, N.A. (Steinberg). Shorewood makes three arguments. First, the circuit court did not have jurisdiction to award litigation expenses. Second, the circuit court erroneously exercised its discretion when it awarded the condemnees litigation expenses which included $108,867 in attorney's fees. Finally, the contingent fee agreement between Steinberg and Attorney Alan Marcuvitz is unenforceable as a matter of law. We reject Shorewood's arguments and affirm the court of appeals decision.

In December of 1986, Steinberg purchased a 2.8-acre parcel of vacant land in Shorewood (Parcel C) for $626,000. Later that month, Steinberg conveyed the property to Parklane Associates, a partnership made up of Steinberg, Marcuvitz, and others. Steinberg remained the record owner of Parcel C until March 26, 1990.

In 1989, Shorewood began negotiating with Steinberg in order to purchase Parcel C. Marcuvitz, a partner in the Parklane partnership, negotiated with Shorewood as "Partner in Charge" of Parklane. In a letter dated

February 23, 1989, Shorewood offered Steinberg $560,000 for Parcel C. Marcuvitz rejected that offer.

Shorewood then adopted a "Resolution of Necessity," after determining it needed Parcel C for park purposes. *See* sec. 32.07(2), Stats. Shorewood obtained two appraisals of Parcel C. One set the value of Parcel C at $639,000, the other at $675,000. Steinberg also obtained an appraisal which set the value of Parcel C at $995,000.

In January of 1990, Shorewood and Marcuvitz negotiated a tentative agreement which would have had Shorewood pay $650,000 for the property. The tentative agreement was subject, however, to a reappraisal of the property, which was necessary because Shorewood had discovered that Parcel C was filled land.

Shorewood obtained a report on Parcel C's soil condition which indicated that the land was filled and as a result, construction costs on the site would increase by $330,000. Armed with this new information, Shorewood's two appraisers lowered their appraisals of Parcel C to $309,000 and $345,000. Steinberg's appraiser still thought the land was worth $995,000. Negotiations ended when Parklane made a non-negotiable demand for $1,280,834.68.

On March 21, 1990, Shorewood made a jurisdictional offer of $345,000 which Steinberg promptly rejected.

Two days later, Marcuvitz—who besides holding shares in Parklane is also of counsel to the law firm of Weiss, Berzowski, Brady, & Donahue—entered into a fee agreement on behalf of Weiss, Berzowski, Brady & Donahue with Parklane. The agreement was signed on behalf of Parklane by a Mr. D. Grande. The relevant part of the agreement provided that if resolution of the matter occurred "as a result of a contested proceeding, our fee

198

will be 33⅓% of any amount obtained above the [jurisdictional offer]."

Shorewood petitioned for assignment of the matter to the condemnation commission. *See* sec. 32.06(7), Stats. The venue line of the petition read: "Before a Judge of the Circuit Court of Milwaukee County." Judge Wasielewski assigned the matter to the condemnation commission.

A three-person panel held a hearing and awarded Steinberg damages of $655,000. Neither party appealed the commission's award. Shorewood paid the amount of the award, plus interest, less prorated taxes, to the clerk of courts who disbursed the amount to Steinberg.

Steinberg then filed a petition for payment of litigation expenses under sec. 32.28(3)(d), Stats. The petition claimed litigation expenses of $112,358.40. These litigation expenses included a claim for attorney's fees of $108,867.00—one-third the difference between the commission's award plus interest ($671,600) and the jurisdictional offer ($345,000). Shorewood moved to dismiss the petition on the ground that Judge Wasielewski lacked jurisdiction. Judge Wasielewski denied the motion, held an evidentiary hearing on the petition, and ordered Shorewood to pay the claimed litigation expenses.

Shorewood appealed from that order. The court of appeals, with Judge Thomas Cane dissenting, affirmed. *Village of Shorewood,* 166 Wis. 2d at 797.

The first issue is whether Judge Wasielewski had competency to award litigation expenses under sec. 32.28(3)(d), Stats. Shorewood frames the issue as one of jurisdiction, but Wis. Const. art. VII, sec. 8 confers plenary jurisdiction upon our circuit courts. *In Matter of Guardianship of Eberhardy,* 102 Wis. 2d 539, 550–51,

307 N.W.2d 881 (1981). *See also Mueller v. Brunn,* 105 Wis. 2d 171, 176, 313 N.W.2d 790 (1982). Therefore, rather than jurisdiction, the issue is one of the circuit court's competency, which is the lesser power to exercise subject matter jurisdiction. *See Miller Brewing Co. v. LIRC,* 173 Wis. 2d 700, 705 n.1, 495 N.W.2d 660, 661 (1993); *In Interest of B.J.N.,* 162 Wis. 2d 635, 656–57, 469 N.W.2d 845 (1991); *In Interest of L.M.C.,* 146 Wis. 2d 377, 390–92, 430 N.W.2d 352 (Ct. App. 1988) ("Common legal usage elsewhere in this country does not reflect the situation in Wisconsin.").

We review the issue of the circuit court's competency to award litigation expenses de novo. *See State ex rel. R.G. v. W.M.B.,* 159 Wis. 2d 662, 666, 465 N.W.2d 221 (Ct. App. 1990). The party asserting a lack of competency has the burden of proving that assertion. *See id.* at 668.

Shorewood claims that Judge Wasielewski lacked competency to award litigation expenses under sec. 32.28(3)(d), Stats., because sec. 32.28(3)(d) authorizes the "court" to award litigation expenses, and Judge Wasielewski, who assigned the case to the condemnation commission under sec. 32.06(7), Stats., acted not as a "court," but as an administrative authority. Shorewood contends that Judge Wasielewski did not act as a "court" because neither party appealed the commission's award, and Steinberg did not commence a new action for litigation expenses.

Shorewood cites *Schroedel Corp. v. State Highway Comm.,* 34 Wis. 2d 32, 148 N.W.2d 691 (1967); *Acheson v. Winnebago County Highway Comm.,* 14 Wis. 2d 475, 111 N.W.2d 446 (1961); and *Madison v. Tiedeman,* 1 Wis. 2d 136, 83 N.W.2d 694 (1957), for the proposition that "a judge to whom a petition for assignment is

addressed, acts only in an administrative capacity." These cases (all decided before sec. 32.28, Stats., became effective) dealt with issues that arose before the condemnation commission had made an award. *Schroedel*, 34 Wis. 2d at 35 (issue of whether assignment of condemnation appeal to condemnation commission was performed by "judge" or "court"); *Tiedeman*, 1 Wis. 2d at 137–38 (issues of proper pleadings and appellate review before condemnation commission had made an award); *Acheson*, 14 Wis. 2d at 478 (issue of appellate review before condemnation commission had made an award). The procedural posture of *Schroedel, Tiedeman, and Acheson* was essential to their holdings; this case presents a different procedural posture than those cases. Because Steinberg filed its petition for litigation expenses after the condemnation commission made its award, the cases Shorewood relies on do not answer the question of whether Judge Wasielewski had competency to award litigation expenses. To resolve this issue, we must interpret sec. 32.28(3)(d), Stats.

We interpret statutes de novo and do so in order to ascertain the legislature's intent. *Voss v. City of Middleton*, 162 Wis. 2d 737, 749, 470 N.W.2d 625 (1991). We first look to the statute's language. *Id.* If that language is clear and unambiguous, our inquiry ends, and we must simply apply that language to the facts of the case. *Id.* If, and only if, the language is ambiguous, we resort to judicial construction to ascertain and carry out legislative intent. *Id.* A statute is ambiguous if reasonably well-informed persons could understand it in two or more ways. *Hurst v. State*, 72 Wis. 2d 188, 195, 240 N.W.2d 392 (1976). The interaction of two statutes can create an ambiguity, as can the interaction of words in the statute. *State v. Kenyon*, 85 Wis. 2d 36, 49, 270 N.W.2d 160

(1978). In construing an ambiguous statute, we may examine the history, context, subject matter, scope, and object of the statute. *Voss,* 162 Wis. 2d at 749.

Section 32.28(3)(d), Stats., provides:

**32.28 Costs.** . . .

. . .

**(3)** In lieu of costs under ch. 814, the *court* shall award litigation expenses to the condemnee if:

. . .

(d) The award of the condemnation commission under s. 32.05(9) or 32.06(8) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15% and neither party appeals the award to the *circuit court*;

. . .

(Emphasis added.)

In sec. 32.28(3), Stats., the legislature authorized the "court" to award litigation expenses. However, sec. 32.28(3)(d) applies only if neither party appeals to the "circuit court." The court of appeals thought that the legislature must have intended "court" to mean something other than "circuit court" because if the legislature intended "court" to mean "circuit court" it would have simply said "circuit court." *Village of Shorewood,* 166 Wis. 2d at 804. We agree with the court of appeals that the legislature created an ambiguity by using the words "court" and "circuit court" in the same section.

Other sections in ch. 32 do not resolve the ambiguity. For example, under sec. 32.06(10), Stats., a "circuit court" has competency if a party appeals the commission's award. A person might reasonably conclude that if "court" means "circuit court" and neither party appeals,

there is no "court." That interpretation, however, would leave condemnees like Steinberg without a "court" to award them litigation expenses under sec. 32.28(3)(d). Further, when the legislature addressed procedure before the commission makes an award, the legislature used both the terms "circuit court" and "judge." Under sec. 32.06(7), the condemnor presents a petition to the "circuit court" if the jurisdictional offer is not accepted; then a "judge" assigns the matter to the condemnation commission. Section 32.28(3)(d) is ambiguous because a reasonably well-informed person could just as reasonably conclude that the legislature intended the word "court" to mean "circuit court" as conclude it intended "court" to mean "judge."

Shorewood urges us to conclude that in order for a condemnee to receive litigation expenses when neither party appeals the commission's award the condemnee must start a new action and pay a filing fee. This procedure strikes us as needlessly inefficient and unreasonable. We conclude that the word "court" in sec. 32.28(3)(d) means "judge" (in the sense that, when neither party appeals the commission's award, judge means the person who assigned the case to the condemnation commission). Therefore, when neither party appealed the commission's award and Steinberg filed a petition for litigation expenses, Judge Wasielewski became the "court." Consequently, we hold that Judge Wasielewski had competency to award litigation expenses.

The next issue is whether Judge Wasielewski properly exercised his discretion when he awarded Steinberg litigation expenses which included $108,867 in attorney's fees. The "litigation expenses" which sec.

32.28(3)(d), Stats., authorizes a court to award include "reasonable" and "necessary" attorney's fees. Section 32.28(1). Our review of the circuit court's determination of the value of attorney's fees is limited to determining whether the circuit court properly exercised its discretion. *Milw. Rescue Mission v. Milw. Redev. Auth.,*161 Wis. 2d 472, 494, 468 N.W.2d 663 (1991); *Standard Theatres v. Transportation Dept.,* 118 Wis. 2d 730, 747, 349 N.W.2d 661 (1984). A circuit court properly exercises its discretion if it "employs a logical rationale based on the appropriate legal principles and facts of record." *Petros v. City of Watertown,* 152 Wis. 2d 692, 696, 449 N.W.2d 72 (Ct. App. 1989).

There is nothing inherently improper about a contingency fee arrangement in an eminent domain case. *Hutterli v. State Conservation Comm.,* 34 Wis. 2d 252, 258, 148 N.W.2d 849 (1967). However, a court in an eminent domain case should use a contingency fee agreement as a guide only and must consider all the circumstances of the case to determine whether the contingency fee amount is a just and reasonable figure. *Id.* at 259. *See also Milw. Rescue Mission,* 161 Wis. 2d at 496-97; *Standard Theatres,* 118 Wis. 2d at 742 n.7. According the circuit court judge the proper deference, we are persuaded that he properly exercised his discretion.

The circuit court did not simply enforce the contingency fee contract. Instead, it held an evidentiary hearing and based its decision on many of the factors in Supreme Court Rule 20:1.5. This is an approach we have approved. *See Milw. Rescue Mission,* 161 Wis. 2d at 497-98; *Standard Theatres,* 118 Wis. 2d at 749-50 n.9. *See also Narloch v. Department of Transportation,* 115 Wis. 2d 419, 436, 340 N.W.2d 542 (1983) (circuit court

has discretion to hold hearing to determine amount of litigation expenses to be awarded).

Supreme Court Rule 20:1.5 lists factors which help determine the reasonableness of an attorney's fee. The circuit court examined many of those factors. Under SCR 20:1.5(a)(6), "the nature and length of the professional relationship with the client" is a relevant factor. The court examined this factor when it noted that Marcuvitz had previously represented Parklane in other matters.

Supreme Court Rule 20:1.5(a)(1) states that "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly" are also factors that help determine the reasonableness of a fee. The court said, "This case was tried for three days before the Commission. There were some 10 or 11 witnesses who testified, including three experts . . .. [I]t must have been a hard fought trial . . . fought well by able counsel." The court also examined the time spent on the case, "just under 155 hours . . .."

Supreme Court Rule 20:1.5(a)(3) provides that "the fee customarily charged in the locality for similar legal services" also has relevance to the fee's reasonableness. Judge Wasielewski noted that "there is a custom of charging contingency fees in this community for this type of legal service. Those fees run anywhere from 25 to 40 percent."

Under Supreme Court Rule 20:1.5(a)(4), "the amount involved and the results obtained" are additional factors to consider. The court said that Parklane had achieved an excellent result.

The "experience, reputation, and ability of the lawyer or lawyers performing the services" are other factors. SCR 20:1.5(a)(7). The court remarked that "the case was

well tried by two counsel who . . . are locally recognized as experienced and eminent in the field of eminent domain and real estate law generally."

Additionally, the court recognized the risks inherent in going before the commission. These were all appropriate factors to consider, and the court employed a logical rationale when reviewing them.

Although the circuit court characterized the proceedings as hard-fought by experienced and able counsel over a period of three days, Shorewood contends that the award of $108,867 in attorney's fees is "clearly excessive" for what it characterizes as a simple administrative proceeding. Counsel for Shorewood billed Shorewood for 85 hours of work at a rate of $150 per hour. The total bill submitted to Shorewood, which included costs and disbursements, was $13,757.35. Shorewood claims that in comparison, the award to Steinberg is unreasonable.

The circuit court recognized that the fee Steinberg claimed was an "extremely high one"; nevertheless, the court thought the fee reasonable based on the factors it examined. If we were to review this case *de novo,* we might make a different determination, but because the circuit court is in "an advantageous position to make a determination as to the reasonableness of a firm's rates[,]" *Standard Theatres,* 118 Wis. 2d at 747, our review is limited to determining whether the circuit court properly exercised its discretion.

Shorewood further argues that because it had previously assessed Parcel C at $675,000 and $639,000 and Steinberg had assessed the property at $995,000, the commission's award of $655,000 "cannot justify the fee." This argument lacks merit because it ignores Shorewood's jurisdictional offer of $345,000. Under sec. 32.28(3)(d), Stats., the jurisdictional offer is the only

relevant figure with which to compare the commission's award. As the circuit court correctly recognized, by going before the commission Steinberg received a substantial increase—from $345,000 to $671,000.

■

The two purposes of sec. 32.28, Stats., are to "discourage low jurisdictional offers and to make the condemnee whole when the condemnee is forced to litigate in order to get the full value of the property." *Standard Theatres*, 118 Wis. 2d at 745. The circuit court's award is in harmony with these purposes. As the circuit court recognized, a dilemma confronted Shorewood. Special counsel had advised Shorewood that under *Darcel, Inc. v. Manitowoc Review Bd.*, 128 Wis. 2d 204, 210, 381 N.W.2d 575 (Ct. App. 1985), and *State ex rel. Geipel v. City of Milwaukee*, 68 Wis. 2d 726, 734, 229 N.W.2d 585 (1975), Parcel C's 1986 purchase price of $626,000 would be nearly conclusive evidence of Parcel C's fair market value. Yet, Shorewood had appraisals that set the value of the land at $309,000 and $345,000. The court said that Shorewood had not acted in bad faith. Good faith notwithstanding, Shorewood made a low jurisdictional offer and forced Steinberg to litigate to obtain the full value of Parcel C. Thus, the award furthered the purposes of sec. 32.28.

■

The circuit court properly examined all the circumstances and determined that the attorney's fee in Steinberg's petition for litigation expenses was reasonable. Accordingly, we hold that the circuit court properly exercised its discretion when it awarded litigation expenses which included those attorney's fees.

Finally, Shorewood argues that the contingent fee contract between Marcuvitz and Parklane is unenforceable as a matter of law against a municipality like Shore-

wood that was not a party to the contract. Shorewood's argument contains a false premise: that the circuit court enforced the contingent fee contract. We have already concluded that, rather than simply enforcing the contingent fee contract, the circuit court examined all the circumstances and used the contingent fee agreement only as a guide in determining a reasonable attorney's fee. Accordingly, we reject Shorewood's argument. Still, we will briefly address Shorewood's different contentions concerning the contingent fee contract.

Shorewood first asserts that this court should strictly scrutinize the contingent fee agreement because it was between Marcuvitz and Parklane, and Marcuvitz was a partner in Parklane; thus, Shorewood argues that Marcuvitz essentially signed the contract with himself. Shorewood does not argue that Parklane did not have the right to its counsel of choice or that the attorney Parklane chose is not entitled to compensation. Shorewood essentially argues that there is something improper in the fee arrangement between Marcuvitz (on behalf of the Weiss firm) and Parklane; and, therefore, we should strictly scrutinize the agreement.

We disagree. In general, there is nothing inherently improper about an attorney who is an attorney for a law firm and a partner in a distinct partnership entering into a contingent fee agreement on behalf of the law firm to represent the partnership in an eminent domain case. Furthermore, Shorewood fails to persuade us that there is anything improper about the specific agreement in this case.

In support of its argument, Shorewood cites *Figge v. Bergenthal,* 130 Wis. 594, 109 N.W. 581, 110 N.W. 798 (1907), a case in which the court stated:

> It is true that, when an officer of a corporation trans-
> acts business with it in which he has a personal inter-
> est, his acts should be carefully scrutinized, and, if it
> appears that the object of his dealings was for the
> purpose of gain to himself and loss to the corpora-
> tion, or the dealing was rendered harmful to the cor-
> poration merely because the transaction was with the
> officer instead of an outside party, the transaction
> should not be upheld if seasonably questioned.

*Id.* at 629. This case would have us focus on whether
Marcuvitz entered into the agreement for his gain and
for Parklane's loss or whether the agreement harmed
Parklane because it was not made with an "outside"
attorney. Marcuvitz and the Weiss firm no doubt hoped
to gain by entering into the contract. Still, as the court
noted, the fee was within the range of fees customarily
charged for this type of case. Moreover, we are not per-
suaded that Marcuvitz entered into the contract for
Parklane's loss. Nor are we persuaded the agreement
harmed Parklane. Indeed, as the court of appeals recog-
nized, *Village of Shorewood,* 166 Wis. 2d at 808,
Marcuvitz, rather than Parklane, took a risk under the
agreement. If the commission's award had not exceeded
the jurisdictional offer by the appropriate amount,
Marcuvitz would not have been compensated.

The other authorities Shorewood cites in support of
its strict scrutiny standard are in the same vein as *Figge,*
and we consequently reject them. *See Knutson v. Muel-
ler,* 68 Wis. 2d 199, 213, 228 N.W.2d 342 (1975) ("In the
absence of bad faith, dishonesty, or fraud, and actual
injury to the corporation, such contracts will be upheld.
Even where the officer represents both himself and the
corporation, the transaction is still not void, but rather
voidable . . ..") (footnote omitted); *Sinclair Refining Co.
v. Long,* 139 Kan. 632, 651, 32 P.2d 464, 475 (1934) ("An

officer may deal with a corporation if his acts are open and fair and known to the directors and stockholders; but all dealings between an officer of a corporation and the board of directors must be scrutinized carefully, and to bind the stockholders must bear evidence of having been in the interests of the corporation."). *See also Yosemite Portland C. Corp. v. State Board of E. of Cal.,* 59 Cal. App. 2d 39, 41–42, 138 P.2d 39, 40 (1943).

We also reject the federal cases Shorewood relies on in making this contention because they deal with class actions which raise different concerns than this case and because Wisconsin has not adopted the approach to attorney's fees these cases espouse. *See Dunn v. H.K. Porter Co., Inc.,* 602 F.2d 1105 (3d Cir. 1979); *Kiser v. Miller,* 364 F.Supp. 1311 (D.D.C. 1973).

Shorewood also argues that the fee agreement is suspect because Marcuvitz entered into it long after he had begun his professional relationship with Parklane. *See generally Spilker v. Hankin,* 188 F.2d 35, 39 (D.C. Cir. 1951); L.A. Bradshaw, Annotation, *Validity and Effect of Contract for Attorney's Compensation Made After Inception of Attorney-Client Relationship,* 13 A.L.R.3d 701, 713 (1967). This argument lacks merit. Marcuvitz had represented Parklane in the past. Additionally, Marcuvitz and Parklane entered into this agreement two days after Shorewood made its jurisdictional offer. Because a jurisdictional offer is the formal commencement of condemnation proceedings, Parklane may not have needed an attorney prior to the jurisdictional offer. *See Kluenker v. State,* 109 Wis. 2d 602, 606, 327 N.W.2d 145 (Ct. App. 1982). Under these circumstances, there was nothing improper in Marcuvitz's signing the agreement two days after receipt of the jurisdictional offer.

210

Shorewood next contends that because Marcuvitz did not offer an hourly rate to Parklane and because Parklane could afford to pay an hourly rate, the contingent fee contract was unethically entered into and is therefore unenforceable. Shorewood relies on an informal ABA opinion.

That opinion states that "[a]lthough neither Rule 1.5 nor DR 2-106 states specifically whether a lawyer must offer an alternative fee arrangement, that issue must be addressed in a context of the 'reasonableness' and 'clearly excessive' tests of the Model Rules and the Model Code . . .." ABA Comm. on Ethics and Professional Responsibility, Informal Op. 86-1521 (1986). "Whether a contingent fee is reasonable and whether it is in the best interest of the client may be dependent on many factors . . .." *Id.* The opinion essentially requires an attorney to offer an hourly rate before entering into a contingent fee agreement in circumstances "when there is any doubt whether a contingent fee is consistent with the client's best interest . . .." *Id.* Additionally, the opinion states that "contingent fees are not necessarily improper even when the client has the money to pay a fixed fee; however, if the client is in a position to pay a fixed fee, the lawyer should permit the client to make the decision whether to pay a reasonable fixed fee or to pay a percentage fee contingent on results." *Id.*

■

There is no evidence that the contingent fee agreement was not in Parklane's best interest or that Parklane did not make an informed decision. Although Marcuvitz apparently never offered or discussed an hourly fee in relation to this matter, members of Parklane testified that Parklane was not in a position to pay an hourly fee and that it desired Marcuvitz to handle the matter on a contingent fee basis. Moreover, Parklane

had entered into contingent fee agreements with Marcuvitz in the past and wished to do so again. The circuit court correctly determined that the fee agreement did "not run afoul of our ethics code . . .."

Shorewood's last attack on the contingent fee agreement is based on the fact that Parklane had not paid Marcuvitz the claimed litigation expenses at the date of the hearing on litigation expenses. Shorewood claims that this is evidence that the contract is a sham. Steinberg maintains that the fees had not been paid because Parklane had other debts, and the Weiss firm agreed to extend Parklane credit. Shorewood says this explanation is "patently incredible." The circuit court reasonably concluded that the fact that Parklane and Marcuvitz had a continuing relationship might help explain why the fee had not yet been paid. More importantly, however, nothing in sec. 32.28, Stats., requires a successful condemnee to pay litigation expenses before petitioning for its reimbursement from the condemnor.

As noted before, the primary reason Shorewood's argument that the contingent fee is unenforceable as a matter of law fails is because that argument falsely assumes that the circuit court enforced the contingent fee contract. Even ignoring that flaw, however, Shorewood's arguments are unpersuasive.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court for determinations of further attorney's fees on appeal and appropriate interest.